## S. D. TONGE *v.* F. KENNETT & Co.

Plaintiffs offered to prove that it is the custom in New Orleans, for the consignee to insure goods consigned for sale, against loss by fire. Defendants, who had reconvened, objected, on the ground that there was no allegation of a neglect to insure and a loss therefrom. *Held:* There would be great force in the objection if the case stood upon a simple answer, but defendants having, by their pleading, become plaintiffs, the evidence was admissible, as tending to rebut the reconventional demand.

To recover against a consignee of goods which had been burnt, while in his possession, and not insured by him, it must be made to appear by the most conclusive proof, that it is the custom for commission merchants to insure goods cons'gned to them for sale, unless instructed to the contrary.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Mott & Frazer*, for plaintiff:

Defendants in a previous shipment from the same plaintiff, through the same agents, of goods of the same kind, and without instruction to insure, charged premium for fire insurance, and rendered their account to the owners, which was not objected to. This mode of doing business being ratified, it becomes the basis of transactions between the parties, and the parties were bound to insure. *Rolston* v. *Barkley*, 6 M. 649; *Berthoud* v. *Gordon*. 6 L. 583; *Strong* v. *High*, 2 Rob. 103; *Patterson* v. *Leake*, 5 An. 547; 1 Domat, Cushing ed. 477; *Moons* v. *Summul*, 2 Wash. C. C. 203; *Wallace* v. *Telfair*, 2 Tenn. R. 188, in note; 1 do do 24; 2 Vesey, jr., 239; 3 Kent. Comm. 261

*Marr* and *Goold & Stansbury*, for defendants and appellants.

MERRICK, C. J. The plaintiff's petition was filed 13th August, 1851. He alleges in substance that in the months of December, 1849, and January 1850, he shipped from Baltimore to the defendants in this city, sundry consignments of cotton ducks and ravens; that defendants made certain advances upon the same; that a balance of $2,033 12½ is still due petitioner; that defendants, although applied to, neglect to account, pretending that the said goods have been lost and destroyed, which petitioner denies to be the truth.

The defendants in their answer, among other things, allege that the goods were stored in their warehouse, a safe building, and that they, with the residue of the merchandise of the defendants, were destroyed by the extensive fire of February, 1850, without any fault on the part of the defendants, a few pieces of the goods being saved from the fire. The defendants then assuming the character of plaintiffs, in reconvention, demand judgment against the plaintiff for $2,066 92, on account of the excess of the advances made by them over the proceeds of the sales of the goods saved at the fire, and the sales rendered the plaintiff before the fire took place. ·

On the trial, the plaintiff offered to prove, by witnesses upon the stand, that it is the custom of commission merchants, in the city of New Orleans, to insure all goods consigned to them for sale. The Judge of the lower court having received the testimony of the witnesses produced, notwithstanding defendents' objection, that the defendants excepted on the ground they were not sued for not insuring the goods assigned to them, but for converting them to their own use, and that the pretended custom was not alleged in the petition. ·

There would be great force in the objections of the defendants, if the case stood upon a simple answer, but the defendants having, by these pleadings become plaintiffs, the evidence was clearly admissible as testimony tending to rebut the reconventional demand.

˷In this court the controversy has turned principally upon the following points, as in substance maintained by plaintiff, viz :

1st. That the defendants having rendered one account of sales in which they charged the plaintiff with fire insurance, it is sufficient evidence to show that such was the course of dealings between the parties, and that they were, there·fore, bound to procure an insurance against fire, on the subsequent consignments.

2d. That it is the custom of commission merchants, in New Orleans, to insure all goods consigned to them for sale, and defendants being bound by it, are responsible for all damages resulting from the non-observance of this custom.

I. The account of sales rendered by defendants to plaintiff's agents, on which the charge for fire insurance is made, bears date, New Orleans, Dec. 31st, 1849. The plaintiff under date of December 19th, 1849, wrote to the defendants that he forwarded them certain invoices and bills of lading (forming the largest part of the goods in controversy) and concluded by saying that he had requested Messrs. *J. C. Sellman & Co.*, (who had made advances on the goods, and who seem to have acted as plaintiff's agents) to obtain insurance upon them. On the 12th of January, 1850, he wrote again from Baltimore, and informed the defendants that Messrs. *J. C. Sellman & Son*, had, at his request, effected insurance upon the invoices of the goods shipped, by the ships Charles and Genesee.

It is possible that the plaintiff intended to inform the defendants, that he had effected a marine insurance upon these goods, but not having done so, and having informed them in general terms that he had requested his agents to procure insurance, he left the defendants at liberty to infer from his general expression that he had insured as far as he considered it his interest to do so, and that if he had intended to instruct them to insure against fire, he would have said so. We do not think the authorities cited cover or are applicable to this case.

101

II. In view of the many millions in value of merchandize, of every character and description, annually consigned to this city for sale, we cannot, on the testimony of three witnesses, (how respectable soever they may be,) founded on their individual experience, say that the custom of commission merchants is to insure against fire in all cases where they do not receive instructions to the contrary. Before we can give our sanction to a custom involving interests of such variety and magnitude, and thus recognizing its legal existence, it must be made to appear by the most conclusive proof. We do not, therefore, think the testimony in this case sufficient to establish the existence of the alleged custom.

In one of the defendants' letters to Messrs. *J. C. Sellman & Son*, written after the fire, they say that in the case where they had insured the plaintiff's goods, it was a special insurance upon those goods. We find further, that the defendants had an open policy of insurance against fire of $7000, at the time of the loss, which was endorsed upon the policy of the insurance issued by the Columbus Insurance Company in these words :

"Nov. 1, 1849. On merchandize generally, (except hemp,) contained in store No. 63 Camp street, being stock in trade for sale on commission or held in trust for others, in the sum of seven hundred (thousand) dollars for six months, $7000, rate 3-4, premium $52 50."

Defendants, in their letter of 22d February, 1850, six days after the fire, speaking of it, inform Messrs. *J. C. Sellman & Co.*, that they have not yet made up their (*Kennett & Co.'s*) claim against the insurance office, but have no doubt that the matter will be speedily arranged.

It appears by the answer that defendants laid before the Insurance Company a statement of their losses, which were made up of loss upon shot, $6045 ; and pilots' ravens and duck, as invoiced at Baltimore, $3704 92 ; total, $9749 92.

The Insurance Company paid them $7000. The defendants, in their correspondence say, and the testimony establishes the fact, that the defendants were specially instructed to insure the shot and lead, but it appears also, that the shot belonged to the firm of *Kennett, Simonds & Co.*, of St. Louis, of which *Ferdinand Kennett*, one of the defendants, was a partner.

The defendants contend, that, inasmuch as they had special instructions to insure for *Kennett, Simonds & Co.*, therefore they are at liberty to apply the amount received from the Insurance Company first to the payment of this firm. Were the firm of *Kennett, Simonds & Co.*, a distinct firm, there would be more reason in this position ; but we look upon the contract of agency as one in which the most perfect good faith should reign, and we do not think that *Ferdinand Kennett*, a member of both firms, should be permitted so far to decide the rights of the parties under the general clause of insurance, in this case, as to cover the loss of himself and partners in full, and apply the remainder only to to plaintiff's claim.

It does not appear that this endorsement upon the policy was made for the benefit of *Kennett, Simonds & Co.*, more than for the plaintiff, and, we think, such were defendants' views, when they wrote the letter of February 22nd, 1850.

We think, therefore, the rights of the parties should be adjusted in this way :

The defendants should be credited with their ad-

| | |
|---|---:|
| vances - - - - - - - - - - - - - - - | $3,200 00 |
| And amount paid freight - - - - - - - - - - | 37 53 |
| Add Insurance - - - - - - - - - - - - - | 20 57 |
| | $3,258 10 |

They should be charged with the proportion of the amount these goods bear, as invoiced, to the amount received for insurance - - - - - - - - - - - $2,659 79

And amount realized from sales of goods injured by fire - - - - - - - - - - - - - - - - - 215 61

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　2,875 40

Difference - - - - - · - - - - - 　 - - - - - $382 70

And there should be judgment on the defendants' reconventional demand for the balance in their favor.

It is, therefore, ordered, adjudged and decreed, by the court, that the judgment of the lower court be avoided and reversed ; and now, proceeding to pronounce such decree as should have been rendered by the lower court, it is ordered, adjudged and decreed, by the Court, that there be judgment in favor of the defendants, upon the demand set up in the plaintiff's petition, and that the said defendants do recover, and have judgment in their favor upon their reconventional demand against the plaintiff, for the sum of three hundred and eighty-two, seventy one-hundreths dollars, with legal interest thereon, from the 16th day of February, A. D. 1850, until paid; and that the plaintiff pay the costs in both courts.